**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GENEVIEVE ADLER, | ) | CASE NO. 1:25-CV-02782-CEH |
| | ) | |
| Claimant, | ) | JUDGE CARMEN E. HENDERSON |
| | ) | UNITED STATES MAGISTRATE JUDGE |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| | ) | |
| | ) | |
| Defendant, | ) | |

**I. Introduction**

Genevieve Adler ("Adler" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 8). For the reasons set forth below, the Court REVERSES the Commissioner of Social Security's non-disability finding and REMANDS this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

**II. Procedural History**

On July 11, 2024, Adler filed applications for DIB and SSI, alleging a disability onset date of March 1, 2024, and claiming she was disabled due to "autism, depression, anxiety disorder, PTSD, and several physical impairments," including chronic pain, obesity, sleep apnea, and wrist impairments. (ECF No. 10, PageID #: 1623, 1625). The applications were denied initially and upon reconsideration, and Adler requested a hearing before an administrative law judge ("ALJ").

(*Id.* at PageID #: 1623). On July 17, 2025, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*Id.*). On August 22, 2025, the ALJ issued a written decision finding Adler was not disabled. (*Id.*). The ALJ's decision became final on October 30, 2025, when the Appeals Council declined further review. (*Id.*).

On December 23, 2025, Adler filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 10, 13, 14). Adler asserts the following assignments of error:

(1) The ALJ failed to properly evaluate the medical opinion of Norman Cerny, LSW, MSW, Claimant's counselor.

(2) The ALJ failed to properly evaluate Claimant's subjective complaints.

(ECF No. 10 at 15, 20).

## III. Background

### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Adler's hearing:

> The claimant indicated at her hearing that she cannot work due to her physical and mental impairments, which include autism spectrum disorder, ADHD, and carpal tunnel syndrome as well as chronic pain and fatigue. She has difficulty sustaining attention and has problems with organization, impulsivity, and emotional dysregulation. She testified that she also has memory issues. She testified that when she was working, she had tension at work due to her autistic traits, which rub people the wrong way. She stated that she would have frequent meltdowns on the clock, and this caused disruption in the workplace. She stated that the meltdowns were mostly crying spells. She stated that they occur when she is overstressed. She stated that she will cry uncontrollably and has a hard time breathing, and her entire body starts to shake and hurt. She stated that it takes her multiple days to recover from a meltdown. She stated that she had them about once a month or more when she was working but now has them less frequently. She stated that when she has one, she has to go to a safe place like her bedroom and usually sleeps it off. She also testified that she has chronic pain issues with her hips, lower back, ankles, knees and wrists. She stated

> that she lives with two roommates. She testified that she cooks simple meals, does the laundry, and washes dishes but has to lean on the counter. She also plays video games, checks her emails and chats online. She stated that she had to stop doing some of her hobbies that she loved like crocheting, writing and music because of her pain. She also testified that she does not like to take showers due to water sensitivity issues. She further stated that when she goes shopping, she has to wear earplugs because she gets overwhelmed by the sound. She indicated that she has to go with her roommate when she goes shopping. She stated that she has to have a list when she goes shopping with a specific mission in mind. She stated that she can only stand for 10 minutes unassisted and can walk less than 500 feet before she needs to take a break. In addition, she stated that she can only sit for 10 to 15 minutes before she has to get up and stretch. She stated that she has gone to gaming conventions but uses a wheelchair.

(ECF No. 7, PageID #: 91).

### B. Relevant Medical Evidence

The ALJ also summarized Adler's health records and symptoms:

> She has a diagnosis of sacroiliac joint disease. She underwent a lumbar spine x-ray on April 1, 2024, which demonstrated mild to moderate degenerative changes involving the lower thoracic spine thoracolumbar junction. She also underwent an x-ray of the pelvis at that time, which was and normal (Exhibits 3F, pp. 49, 56, 136, 138;5F, p. 93). The evidence indicates that the claimant also has complaints of left wrist pain and has been diagnosed with left wrist tenosynovitis. There is also a diagnosis of right carpal tunnel syndrome. The claimant underwent a neuromuscular ultrasound on May 19, 2024, which showed borderline evidence of median neuropathy of the right wrist and very mild ulnar neuropathy of the left elbow (Exhibit 3F, pp. 37, 76, 30). However, physical exams have been normal with normal range of motion, normal muscle strength, intact sensation and normal gait (Exhibits 3F, pp. 36, 75; 5F, pp. 50, 115). Treatment has included physical therapy (Exhibit 5F, pp. 14, 76).
>
> The evidence further indicates that the claimant is obese. A treatment record dated December 16, 2024, noted a BMI of 49.56 (Exhibit 5F, p. 101). The Clinical Guidelines issued by the National Institutes of Health define obesity as present in general where there is a BMI of 30.0 or above and extreme obesity where there is a BMI of 40 or above (See also Social Security Ruling 19-2p). Here, the claimant's obesity is an aggravating factor to her other impairments

> and contributes to her limitation to a range of light work.
>
> With regard to the claimant's mental impairments, the claimant has diagnoses that include major depressive disorder, generalized anxiety disorder, ADHD, autism spectrum disorder, and PTSD (Exhibits 1F, pp. 1, 40; 4F, pp. 1, 9; 7F, pp. 4, 13; 9F, p. 3; 10F, pp. 2, 5, 7; 11F, p. 4). The claimant reports symptoms of hopelessness, low self-esteem, low motivation and energy, trouble focusing and concentrating, mood swings and difficulty sleeping. The evidence notes social difficulties and executive function challenges. She also has recurring intrusive memories of the past (Exhibits 1F, p. 4; 7F, pp. 8, 14; 10F, pp. 36, 38). Mental status exams note that the claimant is tearful at times with anxious mood and pressured or rapid speech but otherwise, the exams are generally normal. The claimant is well oriented with normal thought content and thought process, intact memory, and good insight and judgment (Exhibits 2F, pp. 2-3; 6-7, 14-15, 18-19; 3F, pp. 14, 25, 42, 60; 4F, p. 3; 5F, p. 84; 10F, pp. 13. 15, 38, 40, 42). Treatment has included therapy and medication including Vyvanse. The evidence indicates that the claimant has improved with treatment (Exhibits 2F, p. 17;3F, pp. 18-19; 4F, p. 11; 8F; 10F, pp. 15, 26).

(ECF No. 7, PageID #: 91–92).

### C. Relevant Medical Opinions and Prior Medical Findings

The ALJ also summarized the medical opinions and prior administrative medical findings:

> [T]he State Agency physical capacity assessments completed by Steve McKee, M.D. dated October 6, 2024 and Mehr Siddiqui, M.D. dated November 8, 2024 are persuasive in that they have program knowledge and found that the claimant is limited to frequent handling and fingering with the left upper extremity because this is consistent with the evidence in the record. However, they also found that the claimant can perform a range of medium work with no other limitations and the overall evidence, including treatment records, imaging, and the claimant's testimony establishes that the claimant is limited to a range of light work with never climbing ladders, ropes or scaffolds; occasional climbing of ramps and stairs; occasional stooping, kneeling, crouching, and crawling; frequent handling and fingering with the bilateral upper extremities; and no unprotected heights, dangerous moving machinery, and commercial driving (Exhibits 3A, 4A, 5A, 8A).

The State Agency mental capacity assessments completed by Barry Rudnick, M.D. dated October 1, 2024 and Karla Delcour, Ph.D. dated November 8, 2024 are persuasive because they have program knowledge and concluded that the claimant has moderate limitations in understanding, remembering or applying information, in interacting with others, in concentration, persistence or maintaining pace and in adapting or managing oneself, which is consistent with the evidence in the record including treatment records. They also found that the claimant is capable of understanding and remembering simple work instructions and sustaining concentration and persisting in simple, unskilled work tasks; is capable of carrying out tasks where duties are relatively static and changes can be explained, can interact occasionally in situations that do not require persuasion or frequent contact with the general public, and is capable of carrying out tasks where duties are relatively static and changes can be explained. To the extent she might have symptoms in a work setting, she should avoid inherently hazardous work activities without appropriate safeguards and supervision. While it is persuasive in that it is generally consistent with the overall evidence in the record, the findings are not in vocationally relevant terms (Exhibits 3A, 4A, 5A, 8A).

The record includes a medical source statement completed by Allison Myers, M.D. dated June 24, 2025, which includes a check box form about the claimant's mental abilities and notes that the claimant's performance is precluded in more than 20% of an eight-hour workday or all performance is precluded in a regular work setting. She also noted that the claimant can only sit for less than two hours in an eight-hour workday and never stand and walk in an eight-hour workday. She indicated that the claimant can occasionally lift less than 10 pounds and rarely lift 10 pounds, rarely twist, stoop, crouch, and climb stairs, and never climb ladders. She further noted that the claimant has significant limitations with reaching, handling and fingering. In addition, the claimant would need unscheduled breaks two to three times a day, would be off task more than 30% of the day, and absent about four days a month. This opinion is not persuasive because the overall evidence in the record, including Dr. Myers' own treatment records, do not establish that the claimant has such extreme limitations (Exhibit 9F). For example, Dr. Meyers noted the claimant's mental health was stable, and the brief physical exams did not support such limited functional ability (Exhibit 5F).

There is also a medical source statement in the record completed by Norman Cerny, LSW, MSW dated June 4, 2025, and he concluded that with regard to the claimant's mental abilities, the claimant's

> performance is precluded more than 20% of an eight hour workday or all performance is precluded in a regular work setting. He also noted that the claimant would be off task more than 30% of the day, and absent about four days a month. He further stated that if the claimant was working full time, her symptoms would increase. This opinion is also not persuasive because the overall evidence in the record, including his own treatment records, do not establish that the claimant has such extreme limitations (Exhibit 11F). Treatment notes showed improving anxiety scores, and while mental status exams showed some findings of tangential at times, agitated, rapid speech, distractible, and anxiety, they also reflected appropriate behavior, oriented, appropriate association, no concerns about hygiene, judgment, insight, and memory within normal limits, euthymic mood at times, good attention, and cooperative (Exhibits 6F, 8F, 10F).

(ECF No. 7, PageID #: 92–94).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2028.
>
> 2. The claimant has not engaged in substantial gainful activity since March 1, 2024, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).
>
> …
>
> 3. The claimant has the following severe impairments: major depressive disorder, anxiety, autism spectrum disorder, attention deficit hyperactivity disorder (ADHD), post-traumatic stress disorder (PTSD), degenerative disc disease of the lumbar spine, left wrist tendonitis, right carpal tunnel syndrome, and obesity (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> …

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except never ladders, ropes or scaffolds; occasionally climb ramps and stairs; occasional stooping, kneeling, crouching, and crawling; frequent handling and fingering with the bilateral upper extremities; no unprotected heights, dangerous moving machinery, and commercial driving; the claimant is able to understand, remember, and carry out simple instructions; cannot perform work requiring a specific production rate pace, such as assembly-line work or an hourly production quota; can meet production requirements that allow a flexible and goal-oriented pace; can maintain the focus, persistence, concentration, pace, and attention to engage in such tasks for two-hour increments, for eight-hour workdays, within the confines of normal work breaks and lunch periods; can deal with occasional changes in a routine work setting; can tolerate occasional interaction with supervisors and coworkers and occasional interaction with the general public in situations that do not require persuasion.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

…

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2024, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(ECF No. 7, PageID #: 86–87, 90, 94–96).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g).

"[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B. Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has

the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

**C. Discussion**

Adler raises two issues on appeal, arguing (1) the ALJ failed to properly evaluate the medical opinion of Norman Cerny, LSW, MSW, Claimant's counselor, and (2) the ALJ failed to properly evaluate Claimant's subjective complaints. (ECF No. 10 at 15, 20).

**1. Evaluation of Norman Cerny, LSW, MSW's Medical Opinion**

Claimant first challenges the ALJ's consideration of Norman Cerny, LSW, MSW medical source statement. (ECF No. 12 at 15).

Before proceeding to step four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). Under the current regulations, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [he] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. *Id.* Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. § 404.1520c(c). The ALJ is required to explain how he considered the supportability and consistency of a source's medical opinion but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2).

"The supportability analysis examines the extent to which the objective medical evidence and supporting explanations presented by a medical source… support his… medical opinion(s)." *Woodard v. Comm'r of Soc. Sec.*, No. 5:22-cv-01728, 2023 U.S. Dist. LEXIS 159761, *5 (N.D. Ohio Sep. 11, 2023). The consistency analysis looks at how consistent a medical opinion is with evidence from other sources." *Id.* Under the regulations, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be" and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical findings(s) will be." 20 C.F.R. § 404.1520c(c)(1)-(2).

The ALJ provided the following discussion of Mr. Cerny's opinion:

> There is also a medical source statement in the record completed by Norman Cerny, LSW, MSW dated June 4, 2025, and he concluded that with regard to the claimant's mental abilities, the claimant's performance is precluded more than 20% of an eight hour workday or all performance is precluded in a regular work setting. He also noted that the claimant would be off task more than 30% of the day, and absent about four days a month. He further stated that if the claimant was working full time, her symptoms would increase. This opinion is also not persuasive because the overall evidence in the record, including his own treatment records, do not establish that the claimant has such extreme limitations (Exhibit 11F). Treatment notes showed improving anxiety scores, and while mental status exams showed some findings of tangential at times, agitated, rapid speech, distractible, and anxiety, they also reflected appropriate behavior, oriented, appropriate association, no concerns about hygiene, judgment, insight, and memory within normal limits, euthymic mood at times, good attention, and cooperative (Exhibits 6F, 8F, 10F).

(ECF No. 7, PageID #: 93–94).

Claimant argues that the ALJ did not adequately evaluate Mr. Cerny's opinion because the ALJ "did not properly explain the supportability factor and ignored the consistency factor entirely." (ECF No. 10, PageID #: 1636). Claimant asserts that, had the ALJ properly considered these factors, the ALJ would have found Mr. Cerny's opinion persuasive, which Claimant believes is supported by substantial evidence. (*Id.*).

The Commissioner responds that the ALJ provided a sufficient discussion of how she analyzed the supportability and consistency factors in finding Mr. Cerny's opinion unpersuasive. (ECF No. 13 at 12–13). The Commissioner argues that so long as "the record as a whole supports the Secretary's determination . . . the [ALJ] . . . need not respond in his decision to every item raised but need only write to support the [ALJ]'s decision." (*Id.* at 13) (quoting *Newton v. Sec'y of Health & Human Servs.*, No. 91-6474, slip op. at 4 (6th Cir. July 13, 1992)).

The Court agrees with the Commissioner. Although brief, the ALJ's discussion adequately addressed the supportability and consistency factors. First, regarding the supportability factor, the ALJ found Mr. Cerny's opinion was not persuasive because Mr. Cerny's treatment notes and other medical evidence in the record did not establish Claimant had the degree of limitations that Mr. Cerny concluded in his medical source statement. (ECF No. 7, PageID #: 93–94). Specifically, the ALJ stated that "the overall evidence in the record, including his own treatment records, do not establish that the claimant has such extreme limitations." (*Id.*). By stating "including his own statements," the ALJ evaluated Mr. Cerny's medical source statement in connection with Mr. Cerny's treatment notes in the record and found that Mr. Cerny's medical source statement was not supported by his own treatment records. The ALJ cites to Exhibit 10F, Mr. Cerny's treatment notes for Claimant, and states that "treatment notes showed improved anxiety scores," and "appropriate behavior, oriented, appropriate association . . . good attention

and cooperative." (*Id.*). Mr. Cerny's treatment notes include that Claimant exhibited normal thought process, oriented to person, place and time, appropriate affect, and good attention during several mental status exams starting in January 2025. (*Id.* at PageID #: 1595, 1597). Thus, the ALJ did not merely characterize Mr. Cerny's opinion as unsupported. The ALJ pointed to examples of how Mr. Cerny's treatment notes did not support his conclusions about Claimant's limitations. Therefore, the ALJ did properly consider the supportability factor.

Second, the ALJ adequately considered the consistency of Mr. Cerny's opinion with other evidence in the record. The ALJ stated that Mr. Cerny's opinion was not persuasive because "the overall evidence in the record" was not consistent with Mr. Cerny's conclusions regarding Claimant's limitations. (ECF No. 7, PageID #: 93–94). In making this determination, the ALJ cited Exhibits 6F and 8F. Exhibit 6F consists of treatment notes from the Metro Health Medical Center, dated from January 2024 to May 2025. (*See id.* at PageID #: 1000). Exhibit 8F consists of treatment notes from the Center of Effective Living dated from August 2023 to March 2025. (*See id.* at PageID #: 1510). The ALJ noted that while these treatment notes reflect mental exam results that "showed some finding of tangential at times, agitated, rapid speech, distractible, and anxiety," the notes also showed improved anxiety scores. (*Id.* at PageID #: 94). While Claimant argues that the ALJ's discussion of these medical records is insufficient, the ALJ is not required to discuss each piece of evidence in its opinion to sufficiently evaluate the consistency factor as required by law. *See Lee v. Berryhill*, No. 1:17-CV-1865, 2018 WL 3970553, at *3 (N.D. Ohio Aug. 20, 2018) (explaining that an ALJ does not need to discuss all evidence in the record when making its determination but rather must consider all evidence in the record and the claimant's medically determinable impairments so that the ALJ's opinion is supported by substantial evidence). Therefore, given that the ALJ "fully considered the medical opinions and prior administrative

medical findings" in the record (ECF No. 7, PageID #: 37) and indicated how Mr. Cerny's medical source statement was inconsistent with at least the treatment notes included in Exhibits 6F and 8F, the undersigned finds that the ALJ did sufficiently articulate her consideration of the consistency factor.

Accordingly, the ALJ did not err in her evaluation of Norman Cerny, LSW, MSW's medical opinion.

**2. Evaluation of Claimant's Subjective Complaints**

Claimant next challenges the ALJ's consideration of her subjective complaints.

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of HHS*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, an ALJ must look at medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence in the record. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304.

Beyond the medical evidence, an ALJ should consider daily activities; location, duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of medication to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the individual uses to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions. SSR 16-3p, 2017 WL 5180304 at *7–8. The ALJ need not analyze all seven factors but should show that he considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). An ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms . . . and be clearly articulated so the individual and any

subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*; *see also Felisky v. Bowen*, 35 F. 3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18-cv-1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248–49), report & recommendation adopted, 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

Here, the ALJ provided the following explanation for her treatment of Claimant's subjective complaints:

> [A]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(ECF No. 7, PageID #: 92).

Claimant alleges that the ALJ failed to properly evaluate her subjective complaints because the ALJ did not provide an explanation for her findings. (ECF No. 10, PageID #: 1643). Claimant noted that the ALJ acknowledged the two-step process that is required for evaluating subjective complaints and that the ALJ summarized Claimant's subjective complaints stated in the hearing and treatment history, but Claimant argues that the ALJ did not provide any basis for concluding that Claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms are not consistent with other evidence in the record. (*Id.* at PageID #: 1643–44). Opposingly, the Commissioner opines that Claimant's argument is unavailing because the ALJ

"acknowledged [Claimant's] complaints and autistic meltdowns," "clearly considered many of the criteria set forth in 20 C.F.R. § 404.1529(c)(2),(3) and 416.929(c)(2),(3)," and "thoroughly reviewed the objective evidence in light of [Claimant's] complaints." (ECF No. 13, PageID #: 1682–83).

The Court agrees with Claimant. While the Court acknowledges that the ALJ considered Claimant's subjective complaints, as seen by the ALJ summarizing Claimant's statements in the hearing (ECF No. 7, PageID #: 92), simply recounting the subjective complaints is insufficient. While the ALJ is not required to discuss all of the factors listed in SSR 16-3p, in this case, the ALJ did not evaluate any of the factors for considering Claimant's subjective complaints. There is no analysis or reasoning provided in the ALJ decision in which the ALJ made specific determinations about persistence, intensity, or limiting effects of Claimant's symptoms. For example, the ALJ recounted that "[Claimant] stated that she would have frequent meltdowns on the clock, and this caused disruption in the workplace," and that "[Claimant] stated that she can only stand for 10 minutes unassisted and can walk less than 500 feet before she needs to take a break," but the ALJ did not discuss how these symptoms have limiting effects on Claimant's ability to work or complete daily activities. (*Id.* at PageID #: 91).

Further, the ALJ did not provide an explanation for her evaluation of Claimant's daily activities. The Court recognizes that the ALJ discusses Claimant's daily living activities throughout different parts of her decision:

> The evidence indicates that the claimant is able to perform household chores and any limitations that she has is due to her physical impairments. . . She stated that she lives with two roommates. She testified that she cooks simple meals, does the laundry, and washes dishes but has to lean on the counter. . . when she goes shopping, she has to wear earplugs because she gets overwhelmed by the sound . . . [and] she has to go with her roommate when she goes shopping.

(*Id.* at PageID #: 89–91). While an ALJ need not provide her analysis and conclusion in the same section, the court must still be able to follow a logical bridge when reviewing an ALJ's decision. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (courts look at an ALJ's decision "as a whole" when determining if it complies with the regulations). However, when reviewing the ALJ's decision as a whole, the Court could not identify the analysis that supports the ALJ's determination concerning the intensity, persistence, and limiting effects of Claimant's subjective complaints in any part of the decision.

The ALJ did not provide an analysis of Claimant's daily activities to explain why she discounted them. For example, the ALJ did not describe how she considered the location in which Claimant completes certain activities, the amount of time she spends doing those activities, and the intensity level of those daily activities outside of restating what Claimant included in her subjective complaints. There is no discussion of how the limiting effects of Claimant's symptoms impact her ability to complete work-related activities. Additionally, The ALJ did not identify which allegations she discounted or the inconsistencies that she found. It is not clear what in the record the ALJ relied on and compared Claimant's subjective complaints to for the Court to identify a logical bridge between the ALJ's determination and Claimant's subjective complaints. Therefore, the Court finds that the ALJ erred by not sufficiently explaining her reasoning for concluding that Claimant's subjective symptoms were not entirely consistent with the other evidence in the record, which makes reversal of the Commissioner's decision and remand of this case necessary.

## VI. Conclusion

Based on the foregoing, the Court REVERSES the Commissioner of Social Security's non-disability finding and REMANDS this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

Dated: September 23, 2026

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE